506 So.2d 1173 (1987)
Diane SMITH, Petitioner,
v.
Judy BLOOM, Respondent.
No. 4-86-2337.
District Court of Appeal of Florida, Fourth District.
May 13, 1987.
*1174 Sobel & Sobel, P.A., and Cynthia L. Greene of the Law Offices of Frumkes and Greene, P.A., Miami, for petitioner.
S. Robert Zimmerman, Pompano Beach, and Gerald Mager of Abrams, Anton, Robbins, *1175 Resnick, Schneider & Mager, P.A., Hollywood, for respondent.
HERSEY, Chief Judge.
In an action for dissolution of marriage, the trial court entered orders directing petitioner, Diane Smith, not a party to the litigation, to produce her financial records and to answer questions relating to "sexual misconduct." This discovery was predicated upon the admitted fact that petitioner lives with the husband, Howard Bloom.
Petitioner filed a Motion for Protective Order, seeking to limit the scope of discovery. That motion was denied and the present Petition for Writ of Certiorari ensued.
Our inquiry is limited to a determination of whether the orders constitute a departure from the essential requirements of law, causing irreparable harm that cannot be rectified on plenary appeal. See, e.g., Burroughs Corporation v. White Lumber Sales, Inc., 372 So.2d 122 (Fla. 4th DCA 1979).
Certiorari is the proper vehicle for testing a discovery order, Malt v. Simmons, 405 So.2d 1018 (Fla. 4th DCA 1981), and is particularly appropriate where disclosures are required to be made which, once made, may obviously not be recalled. Id. at 1019.
The following issues are raised by the appellate pleadings: first, the circumstances under which, in an action for dissolution of marriage, a third-party witness may be required to make financial disclosure and to what extent; second, whether, in an action for dissolution of marriage, a third-party witness may be compelled to testify concerning an alleged ongoing sexual relationship with a party where that party's adultery has appropriately been placed in issue.
The parties in the dissolution action were married in 1970 and have two minor children. The primary issues in the dissolution proceedings are: custody of the children, periodic and lump sum alimony for the wife, and equitable distribution.
The partial record which accompanied the pleadings here supports the wife's position that the husband has made transfers of assets of approximately thirteen million dollars and that the husband both denies that he is financially able to meet all the financial needs of the wife and refuses to cooperate in making complete financial disclosure.
In this posture the husband's financial dealings with third parties becomes relevant on the issue of whether he has improperly disposed of or secreted assets to the detriment of the wife and children. Under ordinary circumstances only the financial records of such a third party involving transactions with the husband would be discoverable. Thus, if an individual mortgagee foreclosed on a mortgage encumbering the marital home, the mortgagee's financial records pertaining to all aspects of the mortgage itself and the foreclosure action might properly be discoverable by the wife. It would be inappropriate and improper, however, to require disclosure of those financial records of the mortgagee having no relevance to the husband's financial situation. The rule is that any information sought which is either relevant to the subject matter of the litigation or "appears reasonably calculated to lead to the discovery of admissible evidence," if not privileged, is subject to discovery. Fla.R. Civ.P. 1.280(b)(1).
Petitioner, however, is not a disinterested third party involved in an isolated financial transaction with the husband. She has cohabited with the husband since September of 1985. While cohabitation alone does not open her books and records to scrutiny in this dissolution proceeding, that cohabitation, coupled with admissions on the record of several financial transactions between the cohabiting parties, does establish a basis for requiring disclosure of such financial records as may reasonably be expected to disclose transactions with or in any manner related to the husband and his property.
Any such inquiry must conform to the requirements imposed by the discovery rules. The wife originally caused to be *1176 served upon petitioner a subpoena duces tecum requiring the production of financial information in forty-five separate categories. Petitioner's motion for a protective order was denied. Petitioner has agreed that certain items are discoverable; the wife has agreed to delete certain items from her demand. We do not intend, by this opinion, to indicate whether either or both parties' concessions sufficiently establish the boundaries of discoverable information. We determine only that the demand for discovery is too broad and that failure to impose reasonable restrictions on its scope upon application by motion for protective order constitutes a departure from the essential requirements of law for which there is no adequate remedy upon plenary appeal.
The second aspect of the discovery proceedings brought to our consideration by the petitioner is represented by the following question posed to her, and which she refused to answer, on deposition: "When did you first have sexual relations with Mr. Bloom?"
Consideration begins with the proposition that petitioner's sexual activity is, per se, irrelevant to these dissolution proceedings. The issue of whether discovery concerning such conduct is protected by a privilege has not yet been raised in the lower court (nor here) and is therefore not a factor in our deliberations.
To the extent that petitioner's sexual activity involves the husband, it becomes relevant, in our view, to the same extent and under the same circumstances as the husband's sexual activity. In this respect, petitioner is in the same position as any other witness who observes conduct of a party, which conduct becomes an issue in the litigation.
The first context in which the husband's sexual activity may become relevant in these dissolution proceedings is the court's statutory authority to take a party's adultery into account on the issue of alimony. See § 61.08(1), Fla. Stat. (1985). The statute has been rather strictly construed and does not constitute a license to bring the issue of adultery into every case where alimony is involved. For example, the trial court may refuse to permit one spouse to introduce evidence of the other spouse's adultery if its sole purpose is to obtain alimony or increase the amount of alimony for the spouse offering the evidence. Escobar v. Escobar, 300 So.2d 702 (Fla. 3d DCA 1974). If, on the other hand, evidence of adultery is admitted against a spouse seeking alimony, then the trial court must also consider, in mitigation, evidence of the other spouse's adultery. Claughton v. Claughton, 344 So.2d 944 (Fla. 3d DCA 1977). Marital misconduct may be considered by the court where, regardless of what division is made of available resources, the parties will suffer economic hardship AND the marital misconduct in question caused or contributed to the difficult economic situation. Williamson v. Williamson, 367 So.2d 1016 (Fla. 1979). See also Noah v. Noah, 491 So.2d 1124 (Fla. 1986). Thus, the role of marital misconduct in the trial court's consideration of the issue of alimony has not yet been fully defined and must be considered on a case-by-case basis.
In the context of child custody or visitation, sexual misconduct of one of the parents is seldom a relevant consideration. An exception to this rule is that evidence of sexual misconduct will be admissible where the particular misconduct has a direct bearing on the welfare of the child. Dinkel v. Dinkel, 322 So.2d 22 (Fla. 1975); Culpepper v. Culpepper, 408 So.2d 782 (Fla. 2d DCA 1982).
While the cases speak of the admissibility of evidence of marital misconduct, the discovery rules do not limit inquiry to that which is or may become admissible. As indicated earlier, an inquiry is permissible if the information sought appears to be reasonably calculated to lead to the discovery of admissible evidence.
It is for the trial court to decide whether a particular inquiry into sexual misconduct seeks to elicit a response that would itself be relevant or that might lead to relevant evidence, either on the economic issues or on custody or visitation issues. *1177 In many cases this will require that a delicate balance be maintained between the rights and obligations of the respective parties. An inquiry too narrowly confined may prevent a spouse from obtaining evidence necessary to show that marital misconduct of the other spouse was a substantial contributing factor to the economic disaster that befell the family. Permitting an unfettered fishing expedition, on the other hand, will simply encourage the return of the fault concept to dissolution proceedings with all of its attendant atrocities.
We decide here only that requiring this petitioner to respond to the particular question posed on the present state of this record constitutes a substantial departure from the essential requirements of law for which no adequate remedy is available on plenary appeal.
We therefore grant the petition for writ of certiorari, quash the two orders under review, and remand for further appropriate proceedings.
ANSTEAD and LETTS, JJ., concur.